BOWLES LIVE STOCK COMMISSION COMPANY,
Appellant, v. GUY HUNTER, Defendant, A. Z. HUN-
TER, Interpleader, Respondent.

#### Kansas City Court of Appeals, January 6, 1902.

**Fraudulent Conveyance:** DELIVERY: CATTLE: SUBSEQUENT
CREDITORS: NOTES. Defendant sold interpleader twenty-five
heifers and they remained for thirty-four days in defendant's pasture
in control of his agent. Interpleader then hired defendant's agent
to take care of the heifers for him; plaintiff's attachment was
brought fifty days from the original sale on a note bearing same date
as the sale. *Held,* (1) the sale was fraudulent as to plaintiff as de-
livery was not made within a reasonable time; (2) if plaintiff's note
was made subsequent to its date the sale would be void as to him;
(3) the fact that plaintiff's agent had notice of the sale the day
of its occurrence is immaterial.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,*
Judge.

REVERSED *(with directions).*

*Hewitt & Blair* for appellant.

(1) The vendee must take the actual possession and the possession must be open, notorious and unequivocal, such as to apprise the community or those who are accustomed to deal with the party that the property has changed hands, and that the title has passed out of the vendor and into the vendee. R. S. 1899, sec. 3410; Claflin v. Rosenberg, 42 Mo. 450; Wright v. McCormick, 67 Mo. 429; State ex rel. v. Goetz, 131 Mo. 680; State ex rel. v. Hall, 45 Mo. App. 302. (2) There must be a complete change of the dominion and control over the property and some act which will operate as a divestiture of title and possession from the vendor and transference into the vendee. No symbolical delivery will suffice. Harmon v. Morris, 28 Mo. App. 330; Burgert v. Borchert, 59 Mo. 85; Claflin v. Rosenberg, 42 Mo. 450. (3) When it appears from the undisputed facts of the case that the change of possession is not such as the law requires, the court should, as a matter of law, declare the sale fraudulent. State v. Bergstrom, 79 Mo. 525; State ex rel. v. Goetz, 131 Mo. 680; State ex rel. v. Hall, 45 Mo. App. 303. (4) The retention of personal property after sale is fraud per se it is conclusive and can not be rebutted by other evidence. Knoop v. Nelson Dist. Co., 26 Mo. App. 315; Claflin v. Rosenberg, 42 Mo. 448; Harmon v. Morris, 28 Mo. App. 331; Drug Co. v. White, 66 Mo. App. 27. (5) Notice to creditors of sale can not avail to exempt the parties thereto from the necessity of complying with section 3410. Collins v. Willhoit, 108 Mo. 456.

*Thos. E. Turney* and *James E. Goodrich* for interpleader.

(1) The instruction to find for appellant for the cattle in suit was properly refused. Huggins Cracker & Candy Co. v. Ellis & Co., 45 Mo. App. 585; State ex rel. v. Casteel, 51 Mo. App. 143; Meyer Bros. Drug Co. v. White, 66 Mo. App. 24. (2) As between Guy Hunter and the interpleader,

the purchase of the twenty-five heifers was complete on the nineteenth day of September. It is not pretended that the purchase and sale were not made in good faith, nor that the purchase money was not paid. The transaction was open and every person interested in it was informed of it. Berkley, the appellant's agent, and Clark, the cashier of the bank, were notified of it on the day it was concluded. After the twenty-third day of October the possession of the interpleader was precisely what Guy Hunter's had been prior to that date. There "was a complete change of the dominion and control over the property and a complete divestiture of the possession of the vendor." The twenty-five heifers had been separated from all other cattle owned or claimed by Guy Hunter; the pasture belonged to the interpleader, and Moorman, the one in charge of the pasture and cattle had become the agent and employee of the interpleader. How v. Taylor, 52 Mo. 592; Worley v. Watson, 22 Mo. App. 546; State ex rel. v. Casteel, 51 Mo. App. 143; Springfield Engine Co. v. Glazier, 55 Mo. App. 95.

BROADDUS, J.—This is a controversy which arose in an attachment proceeding instituted by the plaintiff against Guy Hunter, between the plaintiff and the interpleader, A. Z. Hunter. The finding and judgment were against the plaintiff, from which it appealed.

The plaintiff sued upon a promissory note executed by defendant Guy Hunter, payable to plaintiff company for the sum of $3,279.10 which had been reduced by credits to the sum of $861.11; and in aid thereof caused to be issued a writ of attachment against the property of the defendant. The attachment was levied upon certain cattle alleged to be the property of the defendant. A. Z. Hunter filed his interplea and claimed to be the owner of the property so seized under said writ of attachment, to-wit: ten white and mottled-faced grade Hereford heifers two years old in the spring of 1900;

five red heifers with some white on them, two years old also in the spring of 1900; one red and spotted heifer two years old in the spring of 1900; and one crib of corn of about 500 bushels. There seems to have been no dispute as to interpleader's ownership of the corn.

The evidence shows that defendant Guy Hunter had at the farm of interpleader thirty-six heifers; that at one time the interpleader pointed out to defendant twenty-five of the heifers he wanted to buy for breeding purposes; that afterwards on the twenty-eighth of August, 1899, the thirty-six heifers were moved to another pasture some miles distant from the homes of defendant and interpleader, at which time there were a lot of steers and twenty-six other heifers in this other pasture, which latter were taken out before the thirty-six said heifers were turned into it; that this pasture was in charge of one Jerry Moorman who was employed by defendant to take care of his cattle in said pasture; that on September 19, following, while on the road to Cameron, the interpleader and defendant came to terms in reference to the twenty-five head of heifers which interpleader had pointed out on the former occasion when he proposed to buy them, for which he agreed to pay defendant at the rate of $30 per head, in all $750. And interpleader and defendant testified that when they got to Cameron they met the plaintiff's agent, Wm. H. Berkley, and informed him that the interpleader had bought twenty-five head of heifers of defendant at $30 a head, and interpleader expected to borrow from the First National Bank the money to pay for them, whereupon the said Berkley offered to loan the money himself. However, the interpleader borrowed the $750 from the bank and gave it a mortgage on the twenty-five heifers to secure the loan. On October 23, following, the defendant shipped to parties to whom they were mortgaged all the cattle in the pasture except some mortgaged to one James Ewart; some heifers belonging to a Mr. Dice; one heifer upon which plaintiff held a mortgage; and the twenty-

five head of heifers sold to interpleader as aforesaid. There was no dispute but what the consideration for said heifers was paid out by or for the defendant. It was also proved that after interpleader bought the twenty-five head of heifers, Moorman was notified that interpleader wanted his services in caring for the heifers, and that he must look to him for his pay for his services, to which arrangement Moorman assented.

Nine of the twenty-five heifers were, prior to the date of the attachment suit, taken by plaintiff under a writ of replevin, and therefore only sixteen of the number are in controversy in this case. The writ of attachment was issued on the ninth day of November, 1899, and levied on the following day.

The plaintiff contends that the sale was void as to creditors under the statute, and that the court committed error in not instructing the jury, as asked, to return a verdict in its favor. The principal question for our consideration is, was there such a change of possession of the cattle after the sale as the law required?

As will be seen from the statement of facts, which are not controverted as they are taken from that made by interpleader, the sale of the heifers in controversy was made on the nineteenth day of September, 1899, at which time they were in defendant's pasture with a lot of his other cattle in charge of defendant's agent, Moorman. They remained in said pasture with his other cattle continuously until the twenty-third day of October, following, at which time most of his cattle were taken out; these heifers were, however, left in the pasture with some of his cattle until the service of the attachment. On the twenty-third of October, however, Moorman was retained to act for the interpleader and take charge of the heifers. From the time of sale until the twenty-third of October—thirty-four days—the defendant remained in the exclusive possession of the heifers he had sold to the interpleader. And we do not believe that the mere fact that he

hired Moorman to care for them while they were in said pasture with defendant's other cattle was sufficient to interrupt said possession. If not, there was really no change of possession up to the time the writ of attachment was served, which would be fifty days in all.

Section 3410, Revised Statutes 1899, requires that every sale of goods and chattels in the possession of the vendor or under his control, unless the same be accompanied by delivery in a *reasonable time,* regard being had to the situation of the property, etc., shall be void as to creditors, etc. This statute has been construed many times by our Supreme and Appellate Courts. Where the undisputed facts of a case show that a sale was not accompanied by delivery in a reasonable time, regard being had to the situation of the property, it is, under the statute, fraudulent and void, and it is the duty of the court to take the case from the jury. State ex rel. v. Hall, 45 Mo. App. 298; Huggins Cracker etc. Co. v. Ellis & Co., 45 Mo. App. 585; Stewart v. Bergstrom, 79 Mo. 525.

The nature of the property required that the interpleader should have taken possession within a reasonable time after the sale, and we hold that fifty days or thirty-four days was not a reasonable time within which the change of possession should have been made, of the cattle in dispute State ex rel. v. Goetz, 131 Mo. 675.

The promissory note of Guy Hunter to the plaintiff in the suit was executed also on the nineteenth day of September, 1899, the same day on which interpleader bought the heifers in controversy, but subsequently, as we gather from the evidence. Such being the fact, a change of possession on the twenty-third day of October (if there was such a change), a date prior to the levy of the attachment, could make no difference, because the plaintiff became a creditor subsequent to the sale. In such cases a sale is valid only as to existing creditors. McIntosh v. Smiley, 107 Mo. 377, and cases there cited.

In re Estate of Presley Pound.

That Berkley, the plaintiff's agent, had notice of the transaction can make no difference, as it is held that "notice of such a sale to a creditor is immaterial, for it is only notice of a transaction which is void by the rules of law." Collins v. Wilhoit, 108 Mo. 451.

The plaintiff's demurrer to interpleader's case should have been sustained. With this view of the case all other alleged errors become unimportant. The cause is reversed with directions to enter a judgment against the interpleader as to the sixteen head of heifers, and in his favor for the corn in dispute. All concur.