STATE ex rel., SONDHEIMER COMPANY, Appellant, v. STONE, Respondent.

St. Louis Court of Appeals, March 7, 1905.

1. **PRACTICE: Cross-Examining Witness.** In an action on a sheriff's bond for damages on account of a wrongful levy of an attachment, where the plaintiff's agent testified to the purchase of the property levied on, it was proper in cross examination to inquire what price was paid and when and where and how paid, and what such property was reasonably worth at the time.

2. **FRAUDULENT CONVEYANCES: Possession.** Under section 3410, Revised Statutes of 1899, where the purchaser of lumber from a lumber company left it unstacked and unbranded scattered in piles around the lumber company's millyard for several days, while other lumber of the purchaser was stacked and branded, the sale was fraudulent and void as a matter of law, so that a levy under writ of attachment against the lumber company by the sheriff was valid in an attack by the purchaser.

3. **PRACTICE: Judgment for Right Party: Harmless Error.** Where a verdict rendered was manifestly for the right party and a different result could not have been reached by the jury under the law, the verdict will not be disturbed because of erroneous instructions.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*C. G. Shepard* for appellant.

*J. V. Conran* for respondent.

STATEMENT.

Defendant Stone is the sheriff of New Madrid county. The other defendants are sureties on his official bond.

The suit is for an alleged breach of said bond in levying upon and afterwards selling certain lumber in the mill-yard of the Dimension Lumber Company, in New Madrid country, under a writ of attachment sued out in the circuit court of said county by one Greundle, against the Dimension Lumber Company in whose millyard the lumber was levied upon. The plaintiff, E. Sondheimer Company, is an Illinois corporation dealing in lumber and had been buying lumber from the Dimension Lumber Company at its mill for some months.

The testimony shows that the usual course was that plaintiff's agent would buy lumber sawed at the mill and he, together with the secretary or agent of the Dimension Company, would measure said lumber and pay for it and leave it in the mill yard, that during the interim between the measuring and paying for one lot of lumber, the men constituting the Dimension Lumber Company would then stack the lumber theretofore bought in the yard and upon plaintiff's agent's next visit to the mill he would mark or brand the lumber as the property of this plaintiff; that the plaintiff had bought and paid for, but not branded, the lumber levied upon. In this particular instance plaintiff's agent testified he had bought, measured and paid for the lumber levied upon August 16; that when he measured the lumber he left it on the ground for the Dimension Lumber Company to stack as the company did not have men to stack it when is was measured; that he went there and measured it, it was paid for and it was to be stacked between that time and his next visit; that this was all he did when he took up the lumber in this controversy; that he did not mark or brand the lumber and it was not branded or marked when the sheriff levied upon it; that after the lumber was levied upon it was branded; that no one was in charge of the lumber but the mill men from whom it was bought; that the reason it was not branded when taken

up was because it could not very well be branded until it was stacked.

Nothing in the case discloses when the levy was made and no word of evidence indicates how long it continued in possession of the mill men after the alleged purchase and before the levy, but it is evident that it so remained for some days, at least.

The answer admitted the levy and sale as alleged and denied that at the time thereof the plaintiff owned the lumber.

Defendant, on cross-examination of plaintiff's agent who bought the lumber, sought to show some kind of a conspiracy between him and the secretary of the Dimension Lumber Company to take possession of the property of the Dimension Lumber Company and run it for their mutual benefit, but failed in this and no evidence was introduced thereon. The defendant was the only witness on the part of the defense. Defendant testified that he went to the mill of the Dimensinon Lumber Company with the writ of attachment, accompanied by Greundle, the plaintiff in attachment, and found a lot of lumber laying in piles along the sides of the tramroad from the saw, also in a number of different stacks or small piles; that the lumber in piles and stacks along the side of the tramroad was unbranded; that the balance of the lumber stacked was branded "Sondheimer Co;" that this was not touched; that he attached the unbranded lumber only; that a great portion attached was not stacked at all; that the mill men were in charge; that when he first levied the attachment they told him it all belonged to Sondheimer Company and then retracted that statement; that Barnes and Taylor said that the lumber in stacks was Sondheimer Company's; that he asked "old man Craigh" if it belonged to Sondheimer Company (all of said parties were the mill men constituting the Dimension Lumber Company) and he said: "It may be;" that was about the answer he made; that no one seemed to be in charge of it except the three men

at the mill; that Barnes, the secretary, seemed to have more to say than anybody else; that he claimed the stacked lumber and the other two men claimed it was the Dimension Company's lumber, except that in stacks; that sometime after the levy some one branded the lumber "Sondheimer Co.;" that at the sale of the lumber, Barnes, one of the mill men, bought it in and paid for it with his sister's check.

On cross-examination, defendant said he did not exactly know which was Sondheimer Company's lumber; that at first he was told all of it was and then that was retracted and he was told only that in stacks belonged to Sondheimer Company; that he found some of it branded; that he did not levy on any of the lumber that was branded or marked; that sometime after the levy he met plaintiff's agent in Portageville and in a jocular conversation said to him, "I have grabbed some of your lumber."

The court instructed the jury on behalf of the plaintiff and at its request, that plaintiff was entitled to recover, if the jury found that Sondheimer Company was the owner of the lumber in question; that it had measured up, received and paid the Dimension Lumber Company for said lumber prior to the levy; second; that the only question for the jury's consideration was whether or not at the time of the levy and sale the lumber was owned by the Sondheimer Company; third, in regard to the proof of agency of the man who is alleged to have sold the lumber to Sondheimer Company for the Dimension Lumber Company; fourth, that it was the duty of the sheriff to ascertain the owner of the property on which he made the levy and the fact that the plaintiff did not notify the sheriff that it was the owner thereof furnished no excuse to the sheriff for making the levy; fifth, that fraud is not to be presumed, but must be proved; that the burden of proving fraud was on the defendant and unless the jury believed Sondheimer Company had fraudulently entered into an agree-

ment with the Dimension Lumber Company or its agent by which the property of the Dimension Company was to be disposed of to the Sondheimer Company for the purpose and with the intent of defrauding the creditors of the Dimension Company, the verdict should be for the plaintiff.

The court gave but one instruction on behalf of the defendant, which is as follows:

"The court instructs the jury that the measuring of lumber does not constitute possession unless accompanied by other acts sufficient to constitute actual possession, due regard being had to all circumstances and character of the property."

The verdict and judgment were for the defendant. Plaintiff appealed.

NORTONI, J. (after stating the facts).—Appellant contends that the court erred in permitting counsel for the respondent to cross-examine appellant's agent, who claimed to have made the purchase from the Dimension Company for Sondheimer Company, as to the price paid to the Dimension Lumber Company for the lumber and as to what such lumber was actually worth at the time. There is no force in this contention. Appellant bottomed its case upon the alleged purchase from the Dimension Company. Respondent in his answer denied that the Sondheimer Company owned the lumber, thus putting in issue the purchase and every feature of it. The agent at the appellant's instance had given testimony that he made the purchase and that his company owned the lumber. Respondent certainly had the right to examine and inquire what price was paid, and when and where and how paid, or whether there was anything at all paid, in order to ascertain whether there had been a valid transaction. It might be made to appear by such inquiries that there was no valid purchase of the lumber.

The suit is against the sheriff for the value of the lumber at the time of the levy, which was the true measure of damages.   State to use v. Bacon, 24 Mo. App. 403; State to use v. Allen, 12 Mo. App. 566.   It was competent to show what was the market value of this and other lumber of like kind at the time and place in order to ascertain the extent of respondent's liability.   The court committed no error on this score.

So much of section 3410, of the Revised Statutes of 1899, as is pertinent here, provides: "Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time, regard being had to the situation of the property and be followed by an actual and continuous change of possession of the thing sold, shall be held to be fraudulent and void as against the creditors of the vendor."   The alleged purchase of the lumber was laid on August sixteenth; but not a word in the record indicates the exact date the levy was made thereon except the general trend of the evidence, which treats the two occasions as having been some time apart. Our Supreme Court in construing this statute has said: "The vendee must take actual possession and the possession must be open, notorious and unequivocal, such as to apprise the community or those who are accustomed to deal with the party, that the goods have changed hands and that the title has passed out of the seller and into the purchaser. This must be determined by the vendee's using the usual mark and *indicia* of ownership and occupying that relation to the thing sold which owners of property generally sustain to their own property." Claflin v. Rosenberg, 42 Mo. 439; Lesem v. Herriford, 44 Mo. 323; Burgert v. Brochert, 59 Mo. 80; Wright v. McCormick, 67 Mo. 426; Stern v. Henley, 68 Mo. 262; Mills v. Thompson, 72 Mo. 367; Stewart v. Bergstrom, 79 Mo. 524; State ex rel. v. Goetz, 131 Mo. 675, 33 S. W. 161; Steppacher, etc., Co. v. Saunders, 74 Mo. App. 570;

Harmon v. Morris, 28 Mo. App. 326; Farrar v. Stationery Co., 33 Mo. App. 246; Hawkins v. Pressed Brick Co., 63 Mo. App. 64. The evidence shows that appellant did nothing toward taking possession of the property other than measuring it. Its agents then went away, leaving it unstacked and unbranded, laying around on the mill yard of the defendant in the attachment writ, who had sawed and formerly owned the lumber. There was no one left in charge for the appellant other than the men who had manufactured the lumber at their mill. The vendee had not taken actual, open, notorious unequivocal possession of the lumber as required, so that it was discernible to the community or the sheriff that the lumber had changed hands; it was allowed to remain on the ground as before the purchase. Appellant wholly failed to affix the usual marks and *indicia* of ownership, and the fact that some other piles of lumber on the millyard were branded with appellant's brand would tend to show that it owned such stacks of lumber to the exclusion of that scattered about the yard unbranded and unmarked.

Upon this state of facts the court should have taken the case from the jury. It appearing that some days had elapsed after the alleged purchase prior to the levy, the change of possession not having been such as the statute requires, as appears from the undisputed facts, the sale should have been declared to be fraudulent as a matter of law. State ex. rel. v. Goetz, 131 Mo. 675, 33 S. W. 161; Wright v. McCormick, 67 Mo. 426; Stewart v. Bergstrom, 79 Mo. 524; State to use v. Hellman, 20 Mo. App. 304; Reynolds v. Beck, 83 S. W. 292; Knoop ex rel. v. Distilling Co., 26 Mo. App. 303; State v. Durant, 69 Mo. App. 390; Claflin v. Rosenberg, 42 Mo. 439.

Stewart v. Bergstrom, 79 Mo. 524, is a case where Bergstrom had purchased a lot of railroad ties and placed a red dot on each but left the ties in the possession of the parties from whom he purchased and they were levied upon as the property of the vendor. Our Su-

preme Court held, as a matter of law, there was no delivery.

In the present case the court did not take the case from the jury, nor did respondent request the court to do so. The issues were submitted to the jury, both sides joining therein.

The instruction given on the part of the appellant predicated appellant's right to recover on the alleged purchase of the lumber, wholly ignoring that element of the case arising by virtue of the statute above quoted, whether or not the sale was accompanied by delivery in a reasonable time, regard being had to the situation of the property and whether the change of ownership was accompained by an actual, open, notorious and unequivocal change of possession in a reasonable time as required by the statute. The instructions on the part of appellant were more favorable than the case merited. The instruction given on behalf of the respondent, of which appellant complains, was, in our opinion, more favorable to the appellant than the law warranted and he cannot complain thereof. It told the jury that the mere measuring of lumber does not constitute possession, unless accompanied by other acts sufficient to constitute possession, due regard being had, etc. The court might also have added that the law required the taking of actual, open, notorious and unequivocal possession of the lumber within a reasonable time by placing the usual marks and *indicia* of owership upon the lumber, if the situation of the property was such that it would not be removed from the millyard, or other manual possession taken thereof in a reasonable time. This would not have aided appellant, however, as all of the testimony showed that no marks or brands were placed on the lumber and that nothing had been done indicating a change of ownership. The instruction given was faulty, in that it failed to tell the jury that it was appellants duty to take actual, open and notorious possession of the property within a

reasonable time, due regard being had to its situation, etc. As given, it would ordinarily be bad for the reason it was a comment on the evidence. Had it contained more of the law than it did, it would have been that much harder for the appellant to overcome and he cannot be heard to complain of it here. A party cannot complain of an erroneous instruction if the error be favorable to him. State v. Stewart, 90 Mo. 507, 2 S. W. 790; Mangold v. Railroad, 24 Mo. App. 52; Ball v. City of Independence, 41 Mo. App. 462. When an erroneous instruction is given and the trial results in favor of the party at whose instance it was given, the presumption is that the error was prejudicial. Barkley v. Cemetery, Assn., 153 Mo. 300, 54 S. W. 482;¡ State v. Taylor, 118 Mo. 153, 54 S. W. 449; Marton v. Heidorn, 135 Mo. 608, 37 S. W. 504. But when the verdict reached in the case is manifestly for the right party and a different result could not have been reached by the jury under the law, the verdict ought not to be disturbed because of such erroneous instruction. Barkley v. Cemetery Assn., 153 Mo. 300, 54 S. W. 482; Baustian v. Young, 152 Mo. 317, 53 S. W. 921; Noble v. Blount, 77 Mo. 235; Fox v. Windes, 127 Mo. 502, 30 S. W. 323; Macfarland v. Heim, 127 Mo. 327, 29 S. W. 1030; Sherwood v. Railroad, 132 Mo. 339, 33 S. W. 774; R. S. 1899, secs. 865, 659. The instruction was not reversible error in this case.

The judgment is affirmed.

All concur.